UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRETT C. TITTLE,

    **Plaintiff,**

    v.                                                                                                       Case No. 06-C-938

**SGT MICHAEL CARVER and**
**OFFICER MARK W. ROONEY,**

    **Defendants.**

## DECISION AND ORDER

The plaintiff, Brett C. Tittle, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 alleging that the defendants violated his rights under federal and state law in the events surrounding his arrest on July 15, 2006. On April 12, 2007, United States District Judge Lynn Adelmen granted the plaintiff's motion for leave to proceed in forma pauperis on the following claims: 1) Fourth Amendment, based on the warrantless search of his car; 2) Fourth Amendment, based on recording his July 15, 2006, conversation at the police station; 3) Fourth Amendment, based on involuntary blood draw; 4) Fourteenth Amendment due process claim; 5) federal wiretapping claim; 6) state law claim based on the admission of the recording of his June 15, 2006, conversation in a legal proceeding; 7) state law claim for intentional infliction of emotional distress; 8) state law claim for malicious prosecution; and 9) conspiracy claim. The plaintiff has filed a motion for summary judgment and the defendants have filed a cross-motion for summary judgment. Both of these motions will be addressed herein.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73.1 (E.D. Wis.).

## I. SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is proper when the pleadings and other submissions filed in the case show that there is no genuine issue regarding any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). After adequate time for discovery, summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. The existence of a factual dispute between the parties will not defeat a properly supported motion for summary judgment unless the facts in dispute are those which might affect the outcome or resolution of issues before the court. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A genuine issue of material fact exists only where a reasonable finder of fact could make a finding in favor of the non-moving party. Id. at 248; Santiago v. Lane, 894 F.2d 218, 221 (7th Cir. 1990). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine need for trial and summary judgment is proper. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex, 477 U.S. at 323. Once this burden is met, the non-moving party must

designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. Id. at 322-23. When the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. Anderson, 477 U.S. at 267; see also Celotex Corp., 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . ."); Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial."). If a plaintiff merely repeats under oath the same general allegations contained in the complaint, this is not enough to convert claims into evidence sufficient to maintain a claim at the summary judgment stage. Wudtke v. Davel, 128 F.3d 1057, 1061 (7th Cir. 1997).

      To defeat summary judgment, the non-moving party must engage in more than a mere swearing match. Matter of Wade, 969 F.2d 241, 245 (7th Cir. 1992). While the resolution of factual disputes, the sufficiency of evidence developed from the facts, and the relative credibility of the parties are matters generally left to a jury or fact-finder at trial, summary judgment is nonetheless appropriate where the evidence is so one-sided that one party must prevail as a matter of law. Anderson, 477 U.S. at 251-52. If a party's allegations are based on mere conjecture, and are merely colorable or conclusory, and if the evidence supporting those allegations is not significantly probative as to material facts at issue, denial of a motion for summary judgment is not justified. Id. at 249-50.

The fact that both parties have moved for summary judgment, and thus both parties are arguing that there is no genuine issue of fact, does not empower the court to enter judgment as it sees fit. See 10A Charles Alan Wright, et al., § 2720 at 327-28 (3d ed. 1998). The court may grant summary judgment only if one of the parties is entitled to judgment as a matter of law on the basis of the material facts not in dispute. See Mitchell v. McCarty, 239 F.2d 721, 723 (7th Cir. 1957). Each party, as a movant for summary judgment, bears the burden of showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. The fact that one party fails to satisfy that burden on its own motion does not automatically indicate that the opposing has satisfied its burden and must be granted summary judgment on the other motion. See Wright et al., supra, § 2720 at 335.

## II. FACTS

Facts are taken from the Declaration of Brett C. Tittle filed in support of his motion for summary judgment and from the Defendants' Proposed Findings of Fact filed in support of their motion for summary judgment. Facts are included to the extent that they comply with Federal Rule of Civil Procedure 56(e)(1) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated"). In addition to his declaration, Tittle filed an affidavit in response to the defendants' motion for summary judgment in which he disputes certain averments from the defendants' supporting affidavits. However, Tittle's affidavit is not sworn and therefore cannot be considered for purposes of summary judgment. See Scott v. Edinburg, 346 F.3d 752, 759-60 n.7 (7th Cir. 2003). Tittle's response appears to take issue with certain of the defendants' proposed findings, but he did not file a specific response to the defendants' proposed findings of fact, see Civil L.R.

56.2(b)(1) (E.D. Wis.). Therefore, there is no genuine material issue as to the defendants' facts, see Civil L.R. 56.2(e) (E.D. Wis.), unless they conflict with Tittle's declaration. Defendants' reply (docket no. 89) attempts to indicate the proposed findings to which Tittle has taken issue.

The plaintiff, Brett C. Tittle, was incarcerated in the Milwaukee County Jail when he filed the complaint. (Defendants' Proposed Findings of Fact [DPFOF] ¶ 2.) Defendant Mark Rooney is a police officer for the Village of Brown Deer Police Department and defendant Michael Carver is a sergeant with the Village of Brown Deer Police Department. (DPFOF ¶¶ 3- 4.)

On June 15, 2006, at about 2:42 a.m., defendant Officer Rooney, Officer Daniel Hansen, and defendant Sgt. Carver were dispatched to 4227 West Hawthorne Trace Road, Brown Deer, Wisconsin, to investigate a report of damage to property. (DPFOF ¶ 9.) While en route to the scene, dispatch advised the officers that the suspect had left the scene in a light-brown colored vehicle. (DPFOF ¶ 10.) The caller reported that she saw someone she knew, Brett C. Tittle, standing outside her apartment near her cars, and heard the sound of smashing glass. (DPFOF ¶ 11.)

When Officer Rooney arrived at the scene, he found two vehicles with smashed-out rear windows. (DPFOF ¶ 13.) The caller, Gloria Marigny, came outside to speak with Officer Rooney. (DPFOF ¶ 15.) Ms. Marigny told Officer Rooney that Brett C. Tittle, who she had known for over thirty years and who had become obsessed with her, broke the glass windows of her vehicles. (DPFOF ¶¶ 18-20, 23-29.) As the officers were talking to Ms. Marigny, a car which she identified as Tittle's drove past the parking lot. (DPFOF ¶ 40.) Sgt. Carver got into his squad, followed the vehicle and watched it as it parked in a nearby parking lot. (DPFOF ¶ 41.) Tittle was the only person in the vehicle. (DPFOF ¶ 42.) Officer Rooney illuminated the inside of the car with his squad spotlights and, using the public address system in the car, identified himself as the Brown Deer

5

Police and told Tittle he was under arrest. (DPFOF ¶¶ 50-51; Declaration of Brett C. Tittle [Tittle Dec.] ¶ 1.) Sgt. Carver repeatedly ordered Tittle out of his vehicle, until he finally exited his vehicle. (DPFOF ¶ 55-61; Tittle Dec. ¶ 2.) Sgt. Carver ordered Tittle to stand at the rear of his vehicle and put his hands in the air so the officers could see them. (DPFOF ¶ 63; Tittle Dec. ¶ 3.) Although initially noncompliant, Tittle eventually put his hands behind his back, and the officers were able to handcuff him. (DPFOF ¶ 72; Tittle Dec. ¶ 4.) Since there was a significant amount of blood on Tittle's hands, Sgt. Carver called for an ambulance. (DPFOF ¶ 75.)

Both Sgt. Carver and Officer Rooney smelled the odor of alcohol on Tittle's breath. (DPFOF ¶¶ 76, 86.) Sgt. Carver asked Tittle if he had consumed alcoholic beverages that evening, and he said "no." (DPFOF ¶ 77; Tittle Dec. ¶ 8.) Officer Rooney asked Tittle if he had been drinking, and he admitted to having had a beer earlier. (DPFOF ¶ 80; Tittle Dec. ¶ 9.) Officer Rooney had a routine check run on Tittle's identification, which revealed that he did not have a valid Wisconsin driver's license, and that there were two outstanding warrants for his arrest, one through the Milwaukee County Sheriff for damage to property and the other through the Jones County, Georgia, Sheriff for a probation violation. (DPFOF ¶ 85.)

Officer Rooney then searched Tittle's car incident to his arrest. (DPFOF ¶ 89.) Tittle's car was locked before the search. (DPFOF ¶ 90.) Tittle believes the search was illegal because it was conducted before he was read his "Miranda rights" and because he did not consent to the search. (DPFOF ¶¶ 91-92; Tittle Dec. ¶ 5.)

After the North Shore Fire Department ambulance treated Tittle and left the scene, Sgt. Carver transported Tittle to the Brown Deer Police Department for booking and to perform field sobriety tests. (DPFOF ¶ 118.) When transporting suspects to the Brown Deer Police Station, an

6

officer pulls his squad into the garage, or sally port, and leads the suspect from the sally port through a door into the station. (DPFOF ¶ 119.) When Sgt. Carver arrived with Tittle at the Brown Deer Police Department sally port, he got Tittle out of the squad and led him through the door with the posted sign which reads "Audio Monitoring On This Premises," and led him into the station booking room. (DPFOF ¶¶ 120-12.)

Sgt. Carver then performed field sobriety tests on Tittle, after which time Sgt. Carver had probable cause to believe Tittle had operated his motor vehicle while under the influence of an intoxicant. (DPFOF ¶ 144.) Sgt. Carver asked Tittle if he would take a preliminary breath test, as he was authorized to do under Wis. Stat. § 343.303, and Tittle consented. (DPFOF ¶¶ 145-46; Tittle Dec. ¶ 10.) Sgt. Carver conducted the test and received a blood alcohol content reading of .125, above the State of Wisconsin legal limit of .08 for driving a motor vehicle. (DPFOF ¶ 147.) After completing the test, Sgt. Carver determined that Tittle would be under arrest for operating while intoxicated. (DPFOF ¶ 148.)

During the booking procedure and while still in the booking room, Tittle asked to make a telephone call. (DPFOF ¶ 151; Tittle Aff. ¶ 14.) Sgt. Carver asked him what number he was calling so Carver could record it on the booking sheet. (DPFOF ¶ 152; Tittle Aff. ¶ 14.) Although he did not realize it at the time, Sgt. Carver later realized the he dialed Ms. Marigney's number. (DPFOF ¶ 153.) Tittle spoke with Gloria Marigny for about five minutes. (DPFOF ¶ 154.) During the course of this conversation Sgt. Carver was standing two to five feet from Tittle. (DPFOF ¶ 155.) During the conversation Sgt. Carver heard Tittle say the following: "I didn't have my pistol with me." "My pistol didn't fit in my pants pocket." "I'm in the police department. We got this cop sitting right here by me you know you know my my pistol's not gonna fit in my pant's pocket. I had these shorts on.

7

They're not gonna to fit." "I'm in custody. I'm not thinking okay but my pistol wouldn't have fit in my pant's pocket, okay. That wasn't my intention." (DPFOF ¶ 156.) According to Tittle, two days after his phone conversation he learned that Officer Rooney recorded it without his consent and that the defendants downloaded the conversation and used it in an affidavit for a search warrant of Tittle's car to search for a gun that no one has ever seen or found. (Tittle Dec. ¶ 14, Ex. 7.)

The Brown Deer Police Department is a law enforcement agency that routinely records all incoming and outgoing phone calls, and has done so since the booking room was built in 1995. (DPFOF ¶ 157.) Interception of these calls is done in the ordinary course of the department members' law enforcement duties. (DPFOF ¶ 158.) Nobody told Tittle his call was being recorded or monitored, but he knew Sgt. Carver could hear what he was saying. (DPFOF ¶ 159.) Tittle did not see any signs indicating that his phone call would be monitored, but he knew conversations in the room were being tape recorded. (DPFOF ¶ 160.) Sgt. Carver did not provide Tittle with a handbook or orientation informing him that his phone calls would be monitored or recorded. (DPFOF ¶ 161.) There were no signs posted near the phone in the booking room, or on the phone that notified Tittle that his call would be recorded, but there was a sign on the door to the booking room which provided notice. (DPFOF ¶ 162.)

On September 22, 2006, a hearing on Tittle's motion to suppress evidence was held before the Honorable Timothy Dugan. Tittle was seeking to exclude as evidence statements described in Exhibit 7 (a transcript of Tittle's telephone conversation with Marigny) which was intercepted by law enforcement. (Tittle Dec. ¶ 16.) Sgt. Carver stated under oath that he knowingly eavesdropped and recorded Tittle's conversation along with Officer Rooney. (Tittle Dec. ¶ 17.) He also stated that there were no signs posted in the booking room to inform Tittle that his call was subject to

8

monitoring, that he never told Tittle his calls were subject to being recorded or monitored, and that Tittle did not sign anything to indicate that his calls were subject to recording or monitoring. Id.

Sgt. Carver told Officer Rooney he had conducted field sobriety tests on Tittle and that based on these tests he determined that Tittle's ability to drive safely was impaired. (DPFOF ¶ 163.) Sgt. Carver asked Tittle if he would submit to an evidentiary chemical test of his breath and he refused. (DPFOF ¶ 164.) Sgt. Carver read aloud to Tittle a copy of the "Informing the Accused" form, and indicated Tittle's verbal refusal to submit to an evidentiary chemical breath test. (DPFOF ¶ 165.)

During the booking process Tittle stated he used to live in Georgia. (DPFOF ¶ 172.) Officer Rooney informed Brown Deer Police dispatch, who processed this information, and revealed that Tittle had two prior "operating while intoxicated" convictions in Georgia, in 1994 and in September 1996. (DPFOF ¶ 173.) Officer Rooney realized because of these prior offenses, that evening's violation would be Tittle's third OWI offense, and based on district attorney guidelines the officers should do an evidentiary chemical blood test. (DPFOF ¶ 176.) Officer Rooney informed Sgt. Carver of Tittle's prior OWI convictions. (DPFOF ¶ 177.) Sgt. Carver directed Officer Rooney to transport Tittle to St. Mary's/Columbia Hospital for an evidentiary chemical test blood draw. (DPFOF ¶ 178.) Officer Rooney, who took Tittle to the hospital in his squad for the blood draw, read Tittle another "Informing the Accused" form. (DPFOF ¶¶ 179-80.) Tittle refused to submit to the blood draw. (DPFOF ¶ 181.) Officer Rooney provided Tittle with the "Informing the Accused" form. (DPFOF ¶ 182.) Because Tittle's blood contained possible evidence of a crime, Officer Rooney determined that it would be drawn as a search incident to Tittle's arrest. (DPFOF ¶ 183.) Officer Rooney observed as the lab technician began to use the materials in the kit to withdraw blood from Tittle. (DPFOF ¶ 185.) The lab technician had trouble collecting the blood sample as Tittle squirmed

9

around and would not sit still while his blood was being drawn. (DPFOF ¶ 186.) A registered nurse then stepped in and was able to collect blood from Tittle. (DPFOF ¶ 189.) Tittle objected to the method used to draw his blood, because it caused him discomfort since they had difficulty drawing blood from his hands. (DPFOF ¶ 190; Tittle Dec. ¶ 12.) Officer Rooney sealed and packaged the blood vials and transported them to the Village of Brown Deer Police Department. (DPFOF ¶ 191.) Tittle was transported to the Milwaukee County Criminal Justice Facility and turned over to the deputies for safekeeping pending review of this incident for charges of stalking and damage to property, and in order to satisfy the conditions of the warrants from Milwaukee County and Jones County, Georgia. (DPFOF ¶ 193.)

Sgt. Carver issued Tittle traffic citations for operating while intoxicated - third offense, and for operating without a valid driver's license. (DPFOF ¶ 199.) Officer Rooney and Sgt. Carver concluded that on June 15, 2006 at about 2:50 a.m. Tittle intentionally and without Marigny's consent, smashed out the rear windows of her two cars and broke a double–paned glass patio door window on Marigny's apartment, in violation of Sec. 943.01, Wis. Stats., Damage to Property. (DPFOF ¶ 204.) Tittle was charged with smashing out the passenger's side front window of one of Marigny's vehicles in March 2006. (DPFOF ¶ 205.) Tittle was not arrested for this until June 14, 2006. (DPFOF ¶ 206.) Officer Rooney and Sgt. Carver provided the Milwaukee County District Attorney's office with their investigation information so that office could make a determination whether to prosecute Tittle for violation of the damage to property and stalking statutes, and for operating while intoxicated, third offense. (DPFOF ¶ 207.)

On July 1, 2006, Sgt. Carver received blood test results from the Wisconsin Crime Lab from the blood withdrawn from Tittle on June 15, 2006 at Columbia/St. Mary's Hospital. (DPFOF ¶ 220.)

10

Daniel McManaway, an analyst at the Wisconsin State Laboratory of Hygiene conducted an analysis of Tittle's blood that Sgt. Carver submitted for alcohol content analysis. (DPFOF ¶ 221.) The results of the analysis were that Tittle had a blood ethanol level of .105 g/100 Ml. (DPFOF ¶ 222.) Sgt. Carver issued Tittle a Wisconsin uniformed traffic citation for Prohibited Alcohol Concentration. (DPFOF ¶ 223.)

A Milwaukee County jury found Tittle guilty of the stalking charge brought against him involving Marigny, stemming from his June 15, 2006 arrest. (DPFOF ¶ 229.) Tittle filed a motion to vacate the verdict, which motion was denied on October 17, 2007. (DPFOF ¶ 230.) Tittle has been sentenced to three and one-half years in prison based on the stalking charge. (DPFOF ¶ 231.) The case against Tittle for disorderly conduct and criminal damage to property stemming from his June 15, 2006 arrest is pending. (DPFOF ¶ 232.) The case against Tittle for operating a motor vehicle while intoxicated, and for prohibited amount of alcohol content, stemming from his June 15, 2006 arrest, are still pending. (DPFOF ¶ 233.) The case against Tittle for refusal to take a Breathalyzer test after his June 15, 2006 arrest is still pending. (DPFOF ¶ 234.)

### III. ANALYSIS

Tittle filed a Memorandum in Support of Summary Judgment. However, this one page long filing does not address Tittle's claims and therefore is not useful to the court is deciding his summary judgment motion. Tittle's declaration, which primarily consists of facts, does include several legal arguments. Tittle contends that he has shown proof that the warrantless search of his car violated the Fourth Amendment; that the eavesdropping and wiretapping of his telephone conversation violated federal and state wiretapping laws; that the defendants conspired to conduct an involuntary blood draw when they knew he already consented to a Breathalyzer; and "malicious prosecution case

11

by issuing state charges that were not applicable and manipulated due process throughout this entire process." (Tittle Dec. ¶¶ 19-22.)

The defendants contend that there is no evidence to support Tittle's federal law claims. Specifically, the defendants contend that, 1) they did not violate Tittle's rights under the Fourth Amendment by not reading him the Miranda warning before searching his vehicle incident to his lawful arrest; 2) recording Tittle's telephone call from the Brown Deer Police Department did not violate his right to privacy or federal law; 3) subjecting Tittle to an involuntary blood draw did not violate his Fourth Amendment rights; 4) there is no evidence to support a federal conspiracy claim; 5) Tittle does not have a Fourteenth Amendment procedural due process claim; and 6) they are entitled to qualified immunity. Next, the defendants argue that Tittle does not have any viable claims under Wisconsin law. In that regard, the defendants specifically argue that, 1) Tittle failed to comply with state statute requiring he provide notice of his injury and his claim to the municipality; 2) defendants' use of Tittle's telephone call recording to obtain search warrant did not violate Wisconsin law; 3) Tittle's claim for negligent infliction of emotional distress must be dismissed; 4) Tittle's malicious prosecution claim must be dismissed; and 5) defendants enjoy state law immunity for municipal employees.

**A. Fourth Amendment Vehicle Search Claim**

The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. However, police officers may search and seize items found on or near a person, when such search and seizure is made incident to a lawful arrest. Chimel v. California, 395 U.S. 752, 763 (1969). The items may be seized to protect the officer or to preserve evidence. Id. When a lawful arrest has been made of the occupant of an automobile, the police officer may search the automobile. United States v. Patterson, 65 F.3d 68, 70 (7th Cir. 1995); see also New York v. Belton, 453 U.S. 454, 460 (1981) ("when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile"). The police officer may also seize items as evidence incident to the arrest. See United States v. Herrera, 757 F.2d 144, 149 (7th Cir. 1985); United States v. Willis, 37 F.3d 313, 316 (7th Cir. 1994).

In this case, it is undisputed that Officer Rooney searched Tittle's car incident to his arrest. Tittle argues that the search was invalid because the defendants did not have a warrant and because he was not first read his Miranda rights. As the discussion supra. makes clear, defendant Rooney did not need a warrant to search Tittle's car because the search was conducted incident to his arrest. Moreover, Officer Rooney was not required to read Tittle his Miranda rights before searching the vehicle because a consent to search, or as in this case a lack thereof, "is not an interrogation within the meaning of *Miranda*." See United States v. McClellan, 165 F.3d 535, 543-44 (7th Cir. 1999) (quoting United States v. Shlater, 85 F.3d 1251, 1256 (7th Cir. 1996)). Accordingly, the defendants' motion for summary judgment on this claim will be granted.

**B. Fourth Amendment Blood Draw Claim**

The decision of a government official to draw blood to determine an individual's blood alcohol content amounts to a search for Fourth Amendment purposes. Schmerber v. California, 384

13

U.S. 757, 767 (1966). However, blood may be drawn without a warrant if it is incident to a lawful arrest and if, 1) the arresting officers have a "clear indication" that the evidence they seek will be found in the arrestee's blood; 2) exigent circumstances exist; and 3) the method used to take the blood sample is "a reasonable one" and "performed in a reasonable manner." Id. at 770-71.

In this case, the defendants had a clear indication that an unlawful blood alcohol level would be found in Tittle's blood because they both noticed visible and olfactory signs of alcohol use, because Sgt. Carver conducted several field sobriety tests with Tittle, and because the results of the preliminary breath test that Tittle consented to revealed a blood alcohol content reading of .125, above the State of Wisconsin legal limit of .08 for driving a motor vehicle. Second, exigent circumstances existed because of the nature of the dissipation of alcohol from a person's bloodstream. Id. at 770; see also State v. Bohling, 173 Wis. 2d 529, 547-48 (1993). Third, the method used was reasonable. Tittle was taken to a hospital for the blood draw and it was conducted by medical personnel. Although the lab technician had trouble drawing the blood from Tittle's hands because he was squeamish, a registered nurse stepped in and was able to collect the blood.

The undisputed facts reveal that the blood draw did not violate Tittle's rights under the Fourth Amendment. Accordingly, the defendants' motion for summary as to this claim will be granted.

**C. Privacy and Federal Wiretapping Claims**

Although prisoners do not forfeit all of their rights under the Fourth Amendment, their expectation of privacy while in custody is significantly diminished. Hudson v. Palmer, 468 U.S. 517, 527 (1984). The Fourth Amendment extends to the recording of oral statements where the person has legitimate expectation of privacy. Katz v. United States, 389 U.S. 347, 353 (1967).

14

However, where a prison provides notice that calls may be monitored, there is no reasonable expectation of privacy in such communications. United States v. Sababu, 891 F.2d 1308, 1329 (7th Cir. 1989). In this context, the curtailment of the rights of "pretrial detainees is the same as for convicted inmates." United States v. Van Poyck, 77 F.3d 285, 291 (9th Cir. 1996).

In this case, it is undisputed that Tittle's telephone call to Gloria Marigny while he was under arrest at the Brown Deer Police Station was recorded. Tittle was in the booking area when he placed the call and there was nothing posted in that area to inform him that his call would be monitored. However, upon entering the police station through the sally port, there was a sign posted on the door stating, "Audio Monitoring on This Premises." Moreover, in order to place the call, Tittle had to ask permission from Sgt. Carver who actually dialed the telephone number, handed Tittle the telephone, and stood two to five feet from Tittle for the entire five minute conversation. Sgt. Carver overheard portions of the conversation. Give the notice provided, the court concludes that Tittle had no reasonable expectation of privacy under the Fourth Amendment and his claim must be rejected. See Sherman v. Hoenish, No. 04-C-0437, 2004 U.S. Dist. LEXIS 17597, at *7-9 (W.D. Wis. Aug. 25, 2004) (relying on Sababu to reject Fourth Amendment claim of person whose phone calls were monitored while held in county jail on probation hold); see also Van Poyck, 77 F.3d at 291 (holding that any expectation of privacy in outbound calls from pretrial detention facility was not objectively reasonable and the Fourth Amendment was therefore not triggered by the routine taping of such calls).

The court notes that it granted Tittle's December 6, 2007, "motion to enter evidence to support essential elements of claim." The evidence entered consists of the transcript of proceedings on a motion to suppress the recording of the telephone conversation, brought in Tittle's criminal

15

case, Milwaukee County Case Number 06CF003190, before Honorable Timothy G. Dugan. In the hearing on the motion to suppress, Sgt. Carver testified that he granted Tittle's request to make the phone call, stood three to five feet from Tittle during the phone conversation, and heard portions of the conversation from where he was standing. (Tr. at 9.) Sgt. Carver also testified that there were no signs in the booking area announcing that the phones were recorded. Id. at 9. Upon cross-examination, Sgt. Carver testified that no "type of information [was] given to Mr. Tittle, either orally or in writing, that calls might be monitored" and that there was not any orientation in regard to telephone usage. Id. at 11. Judge Dugan granted Tittle's motion to suppress because the recording violated the Wisconsin Electronic Surveillance Control Law, Wis. Stat. § 968.27 et seq., and State v. Riley, 287 Wis. 2d 244, 253-54 (2005).

The state court's determination that the recording was admissible in Tittle's criminal case does not conflict with this court's determination that the recording did not violate Tittle's rights under the Fourth Amendment. Moreover, Sgt. Carver's testimony at the hearing does not conflict with the other evidence in this case. Based on the foregoing, Tittle's Fourth Amendment claim will be dismissed.

Tittle also claims that the recording of his call violated the federal wiretap statute, 18 U.S.C. § 2510 et seq. The statute allows interception "by an investigative or law enforcement officer in the ordinary course of his duties." 18 U.S.C. § 2510(5)(a)(ii). In Sababu, the Seventh Circuit held that prison officials are "investigative or law enforcement officers" and that when they record inmate phone calls pursuant to "an established prison routine" they are acting in the "ordinary course" of their duties. 891 F.2d at 1328-29. In the present case, it is undisputed that the Brown Deer Police Department is a law enforcement agency that routinely records all incoming and outgoing phone

16

calls, and has done so since the booking room was built in 1995. It is also undisputed that interception of these calls is done in the ordinary course of the department members' law enforcement duties. Thus, the court concludes "that the monitoring was done by law enforcement officers in the ordinary course of duty, and accordingly, . . . this case falls within the ambit of § 2510(5)(a)(ii). Id. at 1329.

**D. Due Process Claim**

Upon screening the complaint pursuant to 28 U.S.C. § 1915A, the court stated that although the grounds for a due process claim were unclear, as the factual record in the case became more fully developed, Tittle might be able to demonstrate that he was denied due process. Aside from general and conclusory references to denials of due process, which do not constitute a due process violation, the basis for a due process claim has not become clear. "It is well-settled that conclusory allegations . . . without support in the record, do not create a triable issue of fact." Hall v. Bodine Elec. Co., 276 F.3d 345, 354 (7th Cir. 2002) (citing Patterson v. Chicago Ass'n for Retarded Citizens, 150 F.3d 719, 724 (7th Cir. 1998)). Accordingly, the defendants' motion for summary judgment on this claim will be granted.

**E. Conspiracy Claim**

Tittle contends that the defendants conspired to violate his constitutional rights. However, the establishment of the violation of civil rights is a prerequisite for a conspiracy claim as conspiracy is not an independent basis of liability in § 1983 actions. See Walker v. Thompson, 288 F.3d 1005, 1008 (7th Cir. 2002); see also Cefalu v. Vill. of Elk Grove, 211 F.3d 416, 423 (7th Cir. 2000) (holding that "there is no constitutional violation in conspiring to cover-up an action which does not

17

itself violate the Constitution") (internal citation and quotation omitted). Accordingly, there is no basis of liability under § 1983 for conspiracy.

**F. State Law Claims**

Section 893.80(1) of the Wisconsin Statutes requires a plaintiff to serve two different notices on governmental entities and their officials, agents or employees before filing a lawsuit against them: (1) "written notice of the circumstances of the claim," Wis. Stat. § 893.80(1)(a), and (2) a claim containing "an itemized statement of the relief sought," id. § 893.80(1)(b). State Dep't of Natural Res. v. City of Waukesha, 184 Wis.2d 178, 196-97, 515 N.W.2d 888 (1994), overruled on other grounds by State ex rel. Auchinleck v. Town of LaGrange, 200 Wis.2d 585, 547 N.W.2d 587 (1996); Figgs v. City of Milwaukee, 121 Wis.2d 44, 49, 357 N.W.2d 548 (1984). The statute requires the notice of circumstances to be filed within 120 days after the happening of the event, but imposes no time limit on the filing of the itemized statement of relief sought. Figgs, 121 Wis.2d at 50, 357 N.W.2d 548. Further, "only substantial, and not strict, compliance with the notice statutes is required. Thorp v. Town of Lebanon, 235 Wis. 2d 610, 629 & n.10, 612 N.W.2d 59 (2000).

In this case, it is undisputed that Tittle did not file a notice of claim pursuant to Wis. Stat. § 893.80. Accordingly, he may not proceed on his state law claims.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's motion for summary judgment (Docket #60) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Docket #65) be and hereby is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment dismissing the plaintiff's claims and this action.

Dated at Milwaukee, Wisconsin this <u>24th</u> day of September, 2008.

<u>s/AARON E. GOODSTEIN</u>
U.S. Magistrate Judge

19

Case 2:06-cv-00938-AEG   Filed 09/24/08   Page 19 of 19   Document 108